GEORGE BLISS and THOMAS G. MURPHY, appellants,

*v.*

THE NEW YORK LIFE INSURANCE COMPANY, respondent.

On appeal from an order advised by Vice-Chancellor Pitney in *New York Life Insurance Co.* v. *Thomas G. Murphy et al.,* who delivered the following opinion :

*Mr. Henry S. Terhune,* for the appellants.

*Mr. Thomas P. Fay* (of New York), for the respondent.

PITNEY, V. C.

This is an application to set aside a sheriff's sale of real estate under foreclosure.    The allegation is that the property was sold at a sacrifice, and that such sacrifice was the result of the peculiar manner in which the sale was managed.    The property

brought $19,475, and an advance offer of $1,000 is made by Mr. George Bliss, of New York city, in whom the title to the equity of redemption stood at the time of the sale. He, however, held it for the benefit of Mr. Thomas G. Murphy or some of his family.

There was proof tending to show that the property was worth, in the estimation of several persons, $25,000, but no one was produced who was willing to pay any such sum, and the one bidder who has been produced stated that he had been instructed by his client to buy the property if he could get it for $20,000. It was well advertised and was sold under unusually favorable circumstances. It is situate in Long Branch and it was sold on the 3d of September, being a Saturday, in the afternoon, and many persons were present.

The sale cannot be disturbed by reason of any inadequacy of price. *Morrisse* v. *Inglis, 1 Dick. Ch. Rep. 306.*

If, however, the sale was so managed as to discourage bidders and to result in a considerable sacrifice, that circumstance might, as it seems to me, justify the court in setting aside the sale, even though the purchaser (as is the case here) had nothing to do with such mismanagement.

The ground here relied upon is this : The property consisted of two parcels—one with valuable improvements upon it, situate on the northwest side of Ocean avenue, with a frontage of one hundred and eighty-six feet, the other situate on the southeast side of Ocean avenue and nearly opposite the first tract, and being a mere strip fifteen feet wide, leading from Ocean avenue to the beach and used as a gangway for the occupants of the premises for access to the beach.

There were two mortgages on the property. The first one, for $12,000, covered the strip on the southeast side and one hundred and seventy-six feet on the northwest side, leaving a strip ten feet wide on the southerly side of the main tract, on the west side, not covered by it. The second mortgage was for $3,000 and covered the whole tract on the northwest side, as well as that on the southeast side of Ocean avenue. Both mortgages were foreclosed at the same time by separate bills, and decrees

were signed and executions issued on the same day, April 8th, 1892.    The first decree and execution included both the principal debts of $12,000 and $3,000, together with a sum of money for taxes and assessments paid.    How this could be was not explained.    The second decree and execution covered only the amount due on the second mortgage, with the amount of the taxes and assessments and the costs of that decree.    The result was that if the property had been sold under the first execution and the one hundred and seventy-six feet front had produced enough to pay the whole debt, amounting to some $19,000, the strip of ten feet would not have been sold unless it was to pay the costs of the second execution.    Such being the situation, and the property being advertised for sale, Mr. Murphy, who was the real owner of the equity of redemption, and claimed to act as agent and manager for Mr. Bliss, the nominal owner, called, with his solicitor, upon the solicitor of the complainant, and the solicitor of the complainant explained to them the situation and the effect of selling under the first execution, and asked the solicitor of Murphy whether his client did not wish all the premises sold, including the ten feet, and defendant's solicitor replied that he did, to which Mr. Murphy assented; but no plan was then agreed upon as to how that result should be accomplished.

What occurred at the sale is thus described in the evidence of the solicitor of the complainant:

"At the sale I had No. 2 sold first [meaning that the property was first exposed under the second execution]; the sheriff read off the description of the one hundred and eighty-six feet on the west side of Ocean avenue; before any bids were made and after the sheriff had read the description and statement of the case, I publicly announced that, although the sheriff, under this writ, would sell one hundred and eighty-six feet, yet that the purchaser would get a good title to only ten feet front, because, immediately after this sale, a sale under a prior mortgage would take place, which would take away one hundred and seventy-six feet, leaving only ten feet to the purchaser; I also pointed out the ten feet that the purchaser would get; it was in the same enclosure where the sale took place; I made this announcement fully and clearly, and asked if there was anybody that did not understand it or who wanted to ask any questions for further information."

There was a map in the hands of the solicitor and sheriff, which was shown to persons there.

The first bidding was had on this sale, and the property was bid in by Murphy for $1,000. The one hundred and seventy-six feet were then put up under the first execution and mortgage, and Mr. Fay, as solicitor for Mr. Murphy, and Mr. Murphy, or one of them, announced that whoever bought the one hundred and seventy-six feet could have the ten-foot strip at the same price that they had bid for it, viz., $1,000. The evidence is clear that this was understood by all the purchasers, so that every person who bid on what may be called the "main tract" bid, knowing that, by paying $1,000 more than the amount bid, he would get the whole one hundred and eighty-six feet. The one hundred and seventy-six feet were struck off to Mr. Moritz Walter for the sum of $16,875, and he thereupon signed a bid for the ten feet for $1,000, and for the one hundred and seventy-six feet for $16,875, making $17,875 for the whole one hundred and eighty-six feet. The lot on the east side was then put up for sale and bought by Mr. Murphy for $1,600, making a total of $19,475.

After the sheriff had put up the whole one hundred and eighty-six feet under the second execution and mortgage, and after the solicitor of the complainant had made the explanation above stated, Mr. Fay, the solicitor of Mr. Murphy, came to him and protested against the property being sold in that way, but the solicitor of the complainant insisted upon the sale going on.

The precise point made by the counsel for Mr. Bliss on these facts is that the bidders there were confused and did not bid as much as they would have done if the sale had been conducted differently.

If there had been any sacrifice of the first lot—the strip of ten feet—I should think there might be something in that point, but there is no pretence of that. The ten feet brought all it was worth, and there were no improvements upon it, and it had only value to help sell the main tract of one hundred and seventy-six feet. After that had been bought by Mr. Murphy and the main tract had been put up under the first mortgage and

execution, and the statement had been made that whoever bought could have the ten-foot strip at $1,000, I am unable to see how any confusion of mind could occur with any intelligent bidder. The class of people bidding were intelligent and wealthy persons, and the explanation appears to have been made with great clearness, and everybody seems to have thoroughly understood it. Mr. Patterson, who attended the sale for a client, with instructions to bid $20,000, says he was confused; but he also swears that he thoroughly understood, when the bidding on the main tract took place, that he was to have the ten-foot strip with it at $1,000, and he did bid on that tract. His limit was $20,000, and the reason why he did not bid more on the main tract was that he was uncertain about being able to get the strip on the southeast side at a price which would bring the whole under $20,000. His complaint clearly was that the whole property, as well that on the northwest side as that on the southeast side of Ocean avenue, was not put up together, so that he could bid on them together and be sure to keep within his client's instructions. There, however, does not appear to have been any request to the sheriff to put up the two separate properties together—that is, that on the southeast side with that on the northwest side of Ocean avenue, and that on the southeast side was bought by Mr. Murphy.

The order to show cause will be discharged, with costs. The confirmation of sale will stand.

It is proper to add that the order to show cause was obtained on an allegation that the report of the sale was not made within the time allowed for by the two hundred and fifth rule, and that the party complaining did not have opportunity to file exceptions. This was a mistake. The sales took place on the 3d of September, the reports of the sales were filed on the 7th of September and the decree of confirmation was signed on the 14th of September.

*Mr. Thomas P. Fay,* for the appellant.

*Mr. Richard V. Lindabury,* for the respondent.

United Security Life Ins. Co. *v.* Smith.

PER CURIAM.

Order affirmed for the reasons given by the vice-chancellor.

*For affirmance*—THE CHIEF-JUSTICE, ABBETT, DEPUE, REED, VAN SYCKEL, BOGERT, BROWN, CLEMENT, KRUEGER, PHELPS, SMITH—11.

*For reversal*—None.